## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No.    22-MJ-241-1 (MAU)** |
| | ) | |
| | ) | |
| **EMILY ARCHER PATERSON** | ) | |
| **Defendant.** | ) | |
| | ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW ATTORNEY, Mark L. Goldstone, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Emily Archer Paterson. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. Ms. Paterson acknowledges and accepts responsibility for her part in the interruption of oral arguments in the Supreme Court on November 2, 2022.

Ms. Paterson is a devoted mother, CEO, and wife to a retired military officer. She resides in the suburbs of Washington, D.C. with her family, where she works as the CEO and creative director of Quatrain Creative, a content marketing agency that she founded. Her values of democracy and reproductive rights are what motivated her to protest the Supreme Court's ruling in Dobbs in hopes of encouraging American women to vote to defend abortion access in the

1

midterm elections. Her protest was deliberately designed to be non-violent and minimally disruptive while achieving her mission of speaking out against the legal violation of women's physical and socio-political autonomy. After her short disruption, Ms. Paterson was escorted out of the Court and later transferred to the Washington Metropolitan Police Department where she spent a collective 30 hours in processing, detainment, and release procedures. During this time served, she endured inhumane treatment, including extreme heat, limited access to food or water, sexual groping during a body search, and the denial of her right to a phone call. This time served is an appropriate sentencing within the context of the offense and the personal history/motives of the defendant.

## CASE BACKGROUND AND TRIAL

On November 2, 2022, Ms. Paterson, along with two other protestors, was charged with one count of a class B misdemeanor offense. She arrived at the Supreme Court at around 4:45 am that morning and waited to be granted lawful access to watch the oral arguments of an unrelated banking case scheduled for that day. Upon entering the Court Ms. Paterson waited several minutes before peacefully rising to deliver her prepared statement which lasted only several seconds. Once finished, Ms. Paterson crossed her wrists and placed her hands in front of her to demonstrate compliance with the guards and was escorted out of the Court silently. Following her statements, her two fellow protestors similarly rose and spoke and ultimately joined her outside the Court to be handcuffed and have mugshots taken. Ms. Paterson expressed no resistance or violent behavior at any point in this protesting process; rather, she was intentionally composed and respectful in the delivery of her short statement. Little to no acknowledgment was given to the three interruptions and the attorney speaking resumed his oral arguments promptly

after each statement was delivered by Ms. Paterson and her fellow protestors. In response to the charges, Ms. Paterson has signed a plea agreement, waiver of trial, and statement of offense. She is prepared to go forward with a joint plea and sentencing on January 13, 2023, to one count of Speeches and Objectionable Language in the Supreme Court Building, in violation of 18 U.S.C. § 6134, a misdemeanor.

## ARGUMENT

### I. Legal Standard

The offense is classified as a class B misdemeanor charge of Speech and Objectionable Language in violation of 40 U.S.C. § 6134. That statute states, "It is unlawful to discharge a firearm, firework or explosive, set fire to a combustible, make a harangue or oration, or utter loud, threatening, or abusive language in the Supreme Court building or grounds." 40 U.S.C. § 6134.

In proposing the appropriate sentence for the defendant, the Court must consider Ms. Paterson's history and the nature and circumstances of the crime committed in relation to the seriousness of the offense, considering the many factors set forth in Section 3553(a) of 18 U.S.C. § 3553(a). Such consideration should impose no more of a sentence than is necessary to promote respect for the law, provide just punishment and treatment, afford adequate deterrence, protect the public, allow restitution to victims, and avoid unwarranted inconsistency among similarly situated defendants. 18 U.S.C. § 3553(a).

### II. Imposing a Time-Served Sentence is Sufficient, But Not Greater Than Necessary, to Comply with § 3553(a).

### a. Ms. Paterson's Personal History and Characteristics

Ms. Paterson was born in New Haven, Connecticut and grew up in Old Lyme, Connecticut, a small coastal town. She comes from a family of five, with one brother who is three years older and one brother who is three years younger. Her father was a private banker and her mother taught at the Yale Nursing School.

After graduating from high school in 1995, Ms. Paterson attended Yale University where she obtained a bachelor's degree in English and was an active member of both the women's Ultimate frisbee team and the Aurelian Honor Society. She later pursued a master's degree in social work at the University of Maryland, graduating in 2005. This dual degree allowed her to pursue an editing career at various companies, including roles as senior editor at both Captico LLC and Hinge Marketing. After accruing work experience, Ms. Paterson proceeded to start her own writing and content marketing firm, initially called EP Writing, later renamed Quatrain Creative, of which she is the CEO and founder.

Outside the scope of her demanding work priorities, Ms. Paterson is a devoted mother with two sons, ages 15 and 12. In 2013, Ms. Paterson co-founded and became president of a progressive and nature-focused private elementary school, the River Farm Forest School, which her sons attended for their elementary-school years. This volunteer position became an unpaid second job for Ms. Paterson; after stepping down as president she continued to be closely involved with the school for many years. Fostering a sense of political awareness and an understanding of social issues for her children is extremely important to Ms. Paterson, a value that she's maintained throughout their schooling and in transparent family discussions.

Ms. Paterson has always held democratic beliefs, although does not have an extensive history of activism or radical political participation. She began participating in peaceful protests after the 2016 election, attending women's rights marches and other organized events. She has no criminal record and had never participated in an act of civil disobedience, but as she watched as democratic norms were trampled and civil rights became increasingly violated, she felt as though she needed to get more involved. Based on our nation's history, Ms. Paterson strongly believes that peaceful protest is necessary to effect social and political change. She feels compelled to protect not just her own rights and autonomy, but that of future generations of girls and women—whom she believes should have the same civil rights that were afforded to her.

**b. Nature and Circumstances of the Offense**

Ms. Paterson acknowledged the risk of being arrested before making the statement in the Supreme Court. She stood peacefully and made her statement respectfully for only several seconds to minimize the disturbance it posed. She met the court officers without any resistance and held out her hands to demonstrate her peaceful intentions. The motivation behind her action was to be heard while causing minimal disturbance, and to respectfully comply with any law enforcement officer that she encountered due to her actions. She had no intention of evading law enforcement or avoiding responsibility for her actions.

What Ms. Paterson did not expect, after such a short and peaceful protest, was to spend a harrowing 30 hours in detention, during which time she was groped by a guard; denied access to her legal phone call; transported four times in a dark, crowded and hot transport vehicle; and kept in a small, sweltering cell with very limited access to water. During her detention, Ms. Paterson was held in four different facilities, including the DC cellblock, where she spent the

night in a tiny, bloodstained cell with metal bunkbeds that left her legs covered in bruises. She was put into severe shackles in federal court including waist chains, leg irons, and having her hands shackled to her waist. During one of her transports, Ms. Paterson was zip-tied behind her back and was transported in close quarters with other suspects who were visibly ill.

Throughout her time, Ms. Paterson came into contact with an estimated 50 guards or law enforcement personnel, many of whom appeared to be indifferent and desensitized to human suffering. When Ms. Paterson asked guards for water in the 90-degree cell, for example, she was frequently ignored. The only food she was given was a wet bologna sandwich and two wet cookies that were wrapped in a paper towel. The industrial fan outside of the cell was so loud that Ms. Paterson had to yell to speak to her other cellmate, and the women stuffed toilet paper in their ears to muffle the noise. To survive the sweltering temperatures, the women had to strip down to sports bras and tank tops and removed their shoes and socks despite the filthy conditions of the cell. Additionally, the steel bunk bed in the cell had no mattress; the metal lip on the edge of the bed caused severe bruising on Ms. Paterson's legs.

**c. Need to Avoid Unwarranted Sentencing Disparities, and Impose a Sentence That Reflects the Seriousness of the Offense**

Ms. Paterson has complied with the terms of her pretrial release and has checked in regularly with the pretrial. She fully understands that her actions in the Supreme Court violated the law. Ms. Paterson is adequately deterred from any type of future misconduct due to the harsh consequences she has received. Ms. Paterson served over 30 hours of very difficult jail time for her actions.

There is no reason to believe a sentence greater than time served is necessary to protect the public from Ms. Paterson or to prevent her from future misconduct. Although her actions interrupted the Supreme Court, there was no lasting harm or damage that occurred as a result.

A sentence of time served will simultaneously aid in the prevention of creating unwarranted sentencing disparities. A sentence of probation is also not necessary to promote respect for the law, provide just punishment, protect the community, and provide deterrence or prevent future misconduct.

## CONCLUSION

The above reasons and provided contexts of the offense demonstrate that time served is an appropriate sentencing.

**Certificate of Service**

The undersigned certifies that a true and correct copy of the foregoing was sent by way of

Case File Express to Meredith E. Mayer-Dempsey, Esq., Assistant United States Attorney for the

District of Columbia, Meredith.mayer-dempsey@usdoj.gov on this January 9, 2023.


/ss/ Mark L. Goldstone

Mark L. Goldstone #394135

1496 Dunster Lane

Rockville, MD 20854

mglaw@comcast.net